[53 NYS3d 197]

In the Matter of Owen Chambers, a Suspended Attorney, Respondent. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, Petitioner.

Second Department, May 3, 2017

**APPEARANCES OF COUNSEL**

*Diana Maxfield Kearse*, Brooklyn (*Mark F. DeWan* of counsel), for petitioner.

*Richard E. Grayson*, White Plains, for respondent.

## OPINION OF THE COURT

Per Curiam.

By order filed March 20, 2014 (217 NJ 196, 85 A3d 1004 [2014]), the Supreme Court of New Jersey disbarred the respondent for violating New Jersey Rules of Professional Conduct (hereinafter RPC) rules 1.15 (b) (failure to promptly deliver funds to a third person), 8.1 (b) (failure to cooperate with disciplinary authorities), 8.4 (b) (criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4 (d) (conduct prejudicial to the administration of justice), and New Jersey Statutes Annotated §§ 2C:20-3 (theft by unlawful taking) and 2C:21-34 (a) (third-degree submission of a fraudulent claim for payment pursuant to a government contract). The order of disbarment noted that the respondent failed to appear in response to a prior order directing that he show cause why he should not be disbarred or otherwise disciplined. The order of disbarment was based on a decision of the Disciplinary Review Board (hereinafter DRB) of the Supreme Court of New Jersey dated December 16, 2013.

The respondent was admitted to the New Jersey bar in 2000, and maintained a law practice in New Brunswick, New Jersey. He was previously suspended twice in New Jersey, the first time for three months in 2012 (209 NJ 417, 37 A3d 1134 [2012]), and the second time for six months in 2013 (215 NJ 303, 72 A3d 246 [2013]).

In 2012, the respondent was suspended for three months for gross negligence and lack of diligence for his failure to file a

wage execution against an individual who was improperly holding his client's funds; failure to communicate with the client; failure to safeguard the client's funds and property; failure to cooperate with ethics authorities; misrepresentations about keeping inviolate property that he was required to safeguard; and failure to testify truthfully, under oath, at the ethics hearing (209 NJ 417, 37 A3d 1134 [2012]). This Court suspended the respondent for six months based on this three-month suspension by the Supreme Court of New Jersey (103 AD3d 6 [2012]). The respondent never sought reinstatement in New Jersey from his three-month suspension.

In 2013, the respondent received another six-month suspension in New Jersey, upon his default in a disciplinary proceeding, for his conduct in connection with an escrow agreement. In that matter, he failed to safeguard escrow funds when he improperly released them without a reasonable belief that he could do so; failed to promptly deliver funds to a third party; failed to communicate with the parties to the escrow agreement; failed to supervise a nonlawyer employee, his paralegal; and authorized the paralegal to falsely represent to third parties that he was holding in his trust account $648,800, the purchase price for equipment (215 NJ 303, 72 A3d 246 [2013]).

The December 16, 2013 decision of the DRB which resulted in the New Jersey order of disbarment in 2014 was based on a certification of default filed by the Office of Attorney Ethics (hereinafter OAE). The decision noted that service of process was proper in the matter in that a certified mail receipt, signed by the respondent, indicated that he received a copy of the complaint on June 27, 2013; and that, on July 9, 2013, the OAE sent a letter, by regular and certified mail, to the same address, notifying the respondent, inter alia, that if he did not file an answer within five days of the date of the letter, the allegations in the complaint would be deemed admitted. As of the date of the certification of the record, July 16, 2013, the respondent had not filed an answer to the complaint.

The complaint contained four counts. Summarized briefly, the underlying facts are as follows: Count one alleged that the respondent received a $25,000 check from Innovative Property Management, Inc. (hereinafter IPM), for payment of IPM's water bill; that on November 8, 2010, the respondent deposited the check into his business account, rather than his trust account; that the following day, the respondent issued a $24,000 business account check payable to "cash"; and that none of

funds delivered were used to pay IPM's water bill. Count one also alleged that IPM issued another check to the respondent for $15,000 for payment of its water bill; that the respondent deposited the check into his business account; that the respondent wire-transferred $13,695 from his business account to another person's bank account; and that the respondent did not apply any of the funds received to pay IPM's water bills.

Count two alleged that the respondent practiced law while suspended in that he (1) used letterhead which suggested he was entitled to practice law; (2) failed to advise clients to obtain new counsel; and (3) failed to file an affidavit of compliance. Count two also alleged that the respondent failed to cooperate with the New Jersey disciplinary authorities in that he failed to appear for a demand interview.

Count three alleged that the respondent failed to safeguard funds and promptly turn over settlement funds to a client. The respondent represented a minor client in two matters: a personal injury claim and a criminal matter. In December 2008, the respondent settled the personal injury claim for $5,000, but failed to remit to his client his share of the settlement, and instead applied his share to an outstanding criminal defense fee.

Count four alleged that on September 4, 2012, an assistant public defender filed a grievance against the respondent for his submission of false information, in certified invoices for services that he had provided as a pool attorney for the Office of Public Defender.

Before issuing a determination, the DRB, by letter dated September 10, 2013, notified the respondent that as a result of his failure to timely answer the complaint, the matter had been certified as a default. The letter further advised the respondent that if he wished to pursue the matter further, he could file a motion to vacate the default, setting forth the reason for his failure to file an answer and specific and meritorious defenses to the charges, no later than October 1, 2013. The letter advised the respondent that whether he made such a motion or not, the matter would be reviewed on the written record on November 21, 2013. The respondent did not move to vacate his default.

Accordingly, by decision dated December 16, 2013, the DRB concluded that the facts recited in the complaint supported the charges of unethical conduct, and that the respondent's failure to file an answer was deemed an admission of the allegations

in the complaint. The DRB found the conduct alleged in count one to be the respondent's most serious offense, which the DRB concluded was a "theft" of funds. A disbarment was deemed warranted for the following reasons:

"In this case, respondent committed a theft of $37,695 ($24,000 plus $13,695) that belonged to Innovative. But for the following factors, a long-term suspension might have been justified . . . Specifically, respondent has a serious ethics history: a three-month suspension in 2012 and a six-month suspension in 2013. In both of those matters, he displayed dishonest conduct: in the first, by making a misrepresentation to the ethics investigator that he was safekeeping property that was required to be maintained inviolate, and lying under oath at the ethics hearing; and, in the second, by authorizing his paralegal to make false statements to third parties. In all of his disciplinary matters, he also showed an utter disrespect for ethics authorities. He was found guilty of violating RPC 8.1 (b) in his prior matters and in this one, his second default.

"Respondent's pervasive dishonesty, his refusal to cooperate with ethics authorities, and the overriding need to protect the public from attorneys who, like him, demonstrate a deficiency of character require that he be disbarred. We so recommend to the Court."

By order to show cause dated January 21, 2014, the Supreme Court of New Jersey directed the respondent to show cause before the court on March 18, 2014, at 2:00 p.m., in the Supreme Court courtroom, Hughes Justice Complex, Trenton, New Jersey, why he should not be disbarred or otherwise disciplined.

By order filed March 20, 2014 (217 NJ 196, 85 A3d 1004 [2014]), the Supreme Court of New Jersey disbarred the respondent, noting that the respondent failed to appear in response to the court's order to show cause.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a notice pursuant to former 22 NYCRR 691.3 apprising him of his right to file a verified statement setting forth any of the enumerated defenses to the imposition of reciprocal discipline as enumerated in former 22 NYCRR 691.3 (c). In response to

the Grievance Committee's notice, the respondent submitted a verified statement dated May 30, 2014, wherein he demanded a hearing pursuant to former 22 NYCRR 691.3 (d), and asserted the following defenses: that he was deprived of due process in New Jersey inasmuch as he was not afforded an opportunity to be heard, and that the imposition of reciprocal discipline would be unjust. Contrary to the statement in the DRB's decision that he did not file an answer to the ethics complaint, the respondent claimed that he did file an answer to that complaint. Furthermore, the respondent claimed that he never received the Grievance Committee's 22 NYCRR 691.3 notice in the prior disciplinary proceeding, which resulted in his six-month suspension by this Court.

A hearing was held on September 16, 2015, at which the respondent was represented by counsel. The respondent testified on his own behalf and called three character witnesses. The respondent's defenses to the imposition of reciprocal discipline were based on two arguments. The first argument rested on the fact that the respondent's correct mailing address is 832 Crescent Street, Brooklyn, NY, not 852 Crescent Street. The import of this error is that he allegedly never received the first 22 NYCRR 691.3 notice, which resulted in his six-month suspension, because the Grievance Committee used the wrong mailing address. For that reason, he argued, his six-month suspension should be vacated, although no such motion had ever been filed by the respondent, and his six-month suspension should not be a factor in this Court's determination as to whether reciprocal discipline should be imposed. The respondent's second argument was directed to New Jersey's certification of the disciplinary matter commenced in June 2013 as a default, more specifically, the OAE's letter dated July 9, 2013, stating that he had not answered the complaint and directing him to do so in five days. The respondent claimed that five days was an insufficient time period in which to submit an answer—an "impossible deadline." The respondent did submit an answer, received July 18, 2013, albeit late.

In a written report dated May 18, 2016, the Special Referee concluded that all of the defenses asserted by the respondent were "devoid of merit" as follows:

> "Respondent was served a complaint from the Office of Attorney Ethics of the Supreme Court of New Jersey, by letter dated June 10, 2013, outlining charges of professional misconduct and advising

that a response was due within 21 days. Respondent admitted receipt of said letter and failed to submit an answer to the complaint due to an alleged lack of funds and depression. The Office of Attorney Ethics sent a follow up letter dated July 9, 2013, referencing the previous June 10, 2013, correspondence, advising the respondent that he failed to answer in a timely fashion. Thereafter, respondent submitted his answer on July 18, 2013, while in default. On September 10, 2013, the Disciplinary Review Board of the Supreme Court of New Jersey sent correspondence to the respondent's correct address [and] advised respondent of his failure to timely answer and that a review, on the written record, was scheduled for November 21, 2013.

"Finally, by Order to Show Cause dated January 21, 2014, the Supreme Court of New Jersey ordered that [respondent] show cause before that court on March 18, 2014, why he should not be disbarred or otherwise disciplined. Respondent acknowledged receipt of the Order to Show Cause but failed to appear as directed alleging a lack of funds to retain counsel and inability to get to the Court.

"The overwhelming evidence clearly reveals that Respondent was fully aware of his default in the New Jersey proceedings, knowingly defaulted and failed to avail himself of the numerous opportunities given to him to vacate his default and respond to the disciplinary charges. Respondent was given adequate notice of the disciplinary charges against him in New Jersey and failed to exercise his numerous opportunities to be heard regarding said charges.

"The procedure in the New Jersey jurisdiction did not deprive respondent of due process and the imposition of discipline in New York would not be unjust.

"The defenses raised by the respondent are all devoid of merit and thus totally insufficient to avoid the imposition of reciprocal discipline."

The Grievance Committee now moves to confirm the report of the Special Referee, and for the imposition of reciprocal discipline. The respondent cross-moves (1) to disaffirm the report

of the Special Referee, and (2) for leave to renew in order to vacate the December 12, 2012 suspension under CPLR 2221 (e). The respondent's first argument is that as a result of the Grievance Committee's error in using the wrong address, he was never notified of the 2012 reciprocal disciplinary proceeding, and, for that reason, defaulted. The respondent now asks, for the first time, that the six-month suspension imposed by this Court's opinion and order dated December 12, 2012 (103 AD3d 6 [2012]), be vacated in the interest of justice. As for his second argument, the respondent contends that he was given an impossible deadline by New Jersey to file an answer and, thus, was deprived of due process. On the issue of reciprocal discipline, the respondent argues that the imposition of reciprocal discipline would be unjust because he was not given an opportunity to be heard in New Jersey and because the Grievance Committee committed errors in the 2012 proceeding. He asks that the matter be referred back to the Grievance Committee for whatever action is deemed appropriate, or in the event that public discipline is deemed appropriate, that he be publicly censured.

We find no merit to the respondent's defenses. The record is clear that the respondent was afforded ample notice and opportunity to be heard regarding the disciplinary charges in New Jersey, and that he knowingly and voluntarily defaulted in those proceedings. The respondent's argument focuses on the OAE's July 9, 2013 letter which provided him five days to submit his answer. However, the respondent wholly ignores the fact that the July 9, 2013 letter was a follow-up letter and that the OAE initially had provided him 21 days to submit an answer. More importantly, the respondent overlooks the two subsequent opportunities provided him to rectify his default. Advised that he could move to vacate the default, the respondent chose not to do so. Similarly, although the respondent was advised to appear before the Supreme Court of New Jersey to show cause why he should not be disbarred, he failed to appear or contact the New Jersey Supreme Court in any manner. The respondent's proffered excuses, namely, that he was either too depressed or lacked the necessary funds to retain counsel, are inadequate and do not explain why he did not try to submit pro se papers (either before October 1, 2013, or November 21, 2013), or appear pro se before the New Jersey Supreme Court on the scheduled date (March 18, 2014). It should be noted that in the instant proceeding the respondent submitted a veri-

fied statement, pro se, in response to the Grievance Committee's notice, prior to retaining counsel. The only reasonable conclusion to draw is that the respondent's default in New Jersey was deliberate.

With regard to this Court's 2012 opinion and order, assuming that the respondent never received the first 22 NYCRR 691.3 notice, the respondent admitted in his testimony at the hearing that he learned of his six-month suspension as early as the end of December 2012 or early January 2013. Yet, the respondent now seeks to vacate the order nearly four years later. We find that such relief is not warranted in view of the respondent's failure to move earlier, conduct similar to his defaults in New Jersey.

Under the totality of the circumstances, including the respondent's suspension for three months in New Jersey in 2012, his subsequent suspension for six months in New Jersey in 2013 (emanating from a default), and his disbarment in 2014; the nature of the charges against him, which include allegations of theft of client funds, considered to be the most serious by the New Jersey disciplinary authorities; the respondent's "pervasive dishonesty," as noted by the DRB in its decision; the respondent's history of noncooperation with the New Jersey disciplinary authorities; and, finally, the respondent's disciplinary history in New York, we conclude that a reciprocal disbarment is not unjust.

Accordingly, the Grievance Committee's application to impose reciprocal discipline is granted, the Grievance Committee's motion to confirm the report is granted, the respondent's cross motion is denied, and, effective immediately, the respondent is disbarred based on the disciplinary action taken against him by the Supreme Court of New Jersey.

ENG, P.J., MASTRO, DILLON, BALKIN and LEVENTHAL, JJ., concur.

Ordered that the petitioner's application to impose reciprocal discipline is granted; and it is further,

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent's cross motion is denied; and it is further,

Ordered that pursuant to 22 NYCRR 1240.13, effective immediately, the respondent, Owen Chambers, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Owen Chambers, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (*see* 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Owen Chambers, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Owen Chambers, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).